UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| ) | |
| VS. ) | SA-14-CR-835-XR |
| ) | |
| **HERNAN RAMIREZ** ) | |

**ORDER**

On this day came on to be considered Defendant's motions to suppress (docket nos. 42 and 44).

**Background**

On July 28, 2014, a United States Magistrate Judge found probable cause that the Defendant was in possession of child pornography, and the Magistrate Judge signed a search and seizure warrant authorizing the search of the person of Hernan Ramirez, his residence located at 6222 UTSA Blvd., Apt. 11204B, San Antonio, Texas, and the Defendant's 2003 Black Ford Truck. See Government Exhibit 1 (October 2, 2015 hearing).

On July 29, while conducting surveillance at the apartment identified above, Department of Homeland Security agents discovered that the Defendant was in the process of vacating the apartment and moving into an apartment at a nearby apartment complex. The agents questioned the apartment complex managers and discovered the address and apartment number for the Defendant's new residence. DHS agents did not seek a new warrant based on the newly discovered information.

On July 30, DHS agents went to the new apartment complex and waited until they encountered the Defendant in the parking lot. A DHS agent identified herself, informed the Defendant that she had a search warrant, and she also informed the Defendant that he was not under arrest. At that time the Defendant's cell phone was seized pursuant to the warrant. Defendant's truck was also searched. The DHS agent asked the Defendant if he wanted to talk with the agents and because of the summer heat she suggested that they go to an agent's sports utility vehicle, where the vehicle's air conditioner could be turned on. The Defendant agreed. One agent sat in the driver's seat, the Defendant sat in the passenger seat, and the third agent sat behind the driver in the back seat. The Defendant was informed that his participation was voluntary, that he could choose not to answer any question, and he could also leave if he wished to attend class. During this interview the Defendant initially claimed that his email address had been "hacked", but after agents informed him that they had tracked his internet use to his parents' home, his grandparents' home, and his college apartment, the Defendant admitted to using a laptop computer to view certain images. By this time the agents also became aware that a quick search of the seized cell phone revealed the presence of prohibited images. The Defendant then told the agents that the laptop was inside the new apartment he had just moved into.

The Defendant agreed to allow the agents to seize the laptop from his new apartment and he filled out and signed a Consent to Search form. See Government Exhibit 3. In that document he acknowledged that he had been informed by the Immigration and Custom Enforcement Special Agent that he had the right to refuse consent to a search, and if he voluntarily consented to a search anything discovered may be used against him in a criminal proceeding. He acknowledged in that document that he had "decided to allow ICE Special Agents" to conduct a

complete search of his ASUS laptop located at the new apartment. Finally, the simple four paragraph document stated: "I hereby voluntarily and intentionally consent to allow ICE to search my property. My consent is freely given and not the result of any promises, threats, coercion, or other intimidation. I have read the above statement and understand my rights."

The agents then accompanied the Defendant to his new apartment. The Special Agent verbally asked the Defendant and his girlfriend if it was ok for the agents to enter the apartment. Verbal consent was given by both. The agents entered the apartment, one of the agents accompanied the Defendant into his bedroom, and the Defendant located the laptop and gave it to the agents.

At some point during the interview in the SUV, the agents asked if the laptop and cell phone were all the devices Defendant had that may contain prohibited images. The Defendant told the agents that he also had an external hard drive that may contain images but that he was uncertain where the hard drive was (apparently because of the apartment move that was taking place). The agents told him that since they already found evidence of child pornography on his cell phone, it was not a good idea for him to be in possession of any prohibited images and he should surrender the hard drive. The Defendant argues that the agents made verbal promises to him that leniency would be extended to him if he surrendered the hard drive. The agents left the scene after picking up the laptop. The Defendant was not arrested that day.

On August 4, the Defendant drove to DHS's Fourwinds office and brought a Toshiba external hard drive. He again completed and signed a Consent to Search form (similar to the one described above) authorizing the search of the external hard drive. See Government Exhibit 5.

On October 15, 2014, the Defendant was charged in an eight count indictment with distribution of child pornography, receipt of child pornography, and possession of child pornography.

In his motion to suppress, the Defendant argues that he was subjected to a custodial interrogation, that because of the presence of numerous armed police officers any statements he made were involuntary, that he was placed in a vehicle that had doors with an automatic lock feature, and that he was not apprised of his *Miranda* warnings.

## Analysis

Defendant does not challenge the seizure of his cell phone. The Court finds that the cell phone was properly seized pursuant to the warrant.

With regard to the questioning of the Defendant inside the SUV and the subsequent seizure of the laptop, whether a person is "in custody" is an objective inquiry that depends on the "totality of circumstances." *U.S. v. Wright*, 777 F.3d 769, 774 (5th Cir. 2015). Important factors include: (1) the length of the questioning, (2) the location of the questioning, (3) the accusatory, or non-accusatory, nature of the questioning, (4) the amount of restraint on the individual's physical movement, and (5) statements made by officers regarding the individual's freedom to move or leave. *Id*. at 775.

This case is somewhat similar to *U.S. v. McNair*, 2010 WL 2038297 (W.D. Tex. 2010). In *McNair*, McNair was told that the interview was voluntary, that he was not under arrest, that the agents were investigating trafficking of child pornography, that he was free to leave at any time, and that it "was up to him to answer any questions." Special Agents Allovio and Baker

were wearing business suits during that interview. Their handguns remained concealed. The interview initially took place in a bedroom on the second floor to allow for the search of the first floor. The interview lasted approximately one hour and forty minutes. During the interview, McNair admitted to having an interest in child pornography, and acknowledged that he had downloaded images and videos. During the interview McNair signed a "consent to assume online presence" form, wherein he gave FBI agents authorization to take control of and use his "online presence" to Fram337 and other accounts. He acknowledged on this consent form that he had given this "consent freely and voluntarily, without fear, threats, coercion, or promises of any kind...." After examining all of the circumstances surrounding the interrogation, the Court concluded that there was no restraint on McNair's freedom of movement of the degree associated with a formal arrest. McNair was told he was free to leave at any time, was informed that his interview was voluntary, and he was not handcuffed at any point. The Court concluded that a reasonable person would have felt he was at liberty to terminate the interrogation and leave at any time.  The Court of Appeals affirmed. *See* 444 F. App'x 7690 (5th Cir. 2011) ("McNair was in his home when the detention occurred, and an agent testified that McNair was told he was free to leave. We have held that under such circumstances, a reasonable person does not suffer the restraints associated with an arrest. *United States v. Harrell*, 894 F.2d 120, 124–25 (5th Cir. 1990). Further, an agent testified that McNair was told that he was not under arrest and would not be arrested that day, which also weighs against a finding of custody. *See United States v. Howard*, 991 F.2d 195, 200 (5th Cir. 1993). In addition, agents told McNair that it was his decision whether to talk to them, and McNair agreed to cooperate and signed a consent form that allowed agents to use his online identities and passwords. Although the initial presence of numerous armed FBI agents wearing raid vests may have been intimidating, that alone is not

enough. *See Howard*, 991 F.2d at 200. Further, the fact that McNair's interrogation lasted for almost two hours does not mean that the interrogation was per se custodial. *See Harrell*, 894 F.2d at 124 & n. 1.").

In this case the Court finds that the various agents present at the apartment complex did not draw any weapons and their firearms remained holstered at all times. The Court finds the testimony of the Defendant's girlfriend that a shotgun was displayed in an open parking lot or that firearms were drawn is not credible. Further, the testimony of the Defendant's girlfriend regarding the number of agents inside the SUV, and their location inside the SUV is not credible. The interview of the Defendant inside the vehicle was done because of the summer temperature. The Defendant agreed to the interview and was repeatedly told the interview was voluntary, that he could choose not to answer any question, and that he could leave at any time. The mere fact that the vehicle may have had automatic or power door locks does not negate the fact that the Defendant could have stopped the interview at any time. There was no testimony to suggest that the Defendant could not have simply exited the vehicle if he chose to do so. During the entire 45 minute process the Defendant was advised he was not under arrest, he was never handcuffed, nor was he ever restrained. He was told he could leave if he wanted to go to class. The ICE agents were not required to administer *Miranda* warnings because the Defendant was not "in custody." No coercive techniques were applied to the Defendant. Although the Defendant may have understandably been nervous and concerned that his actions had been discovered, the Defendant remained calm, understood the verbal and written admonishments given him and nevertheless

provided voluntary consent.[1]  Defendant provided a voluntary verbal consent to be interviewed and he also provided a voluntary written consent to search his new apartment and the laptop.

With regard to the Toshiba external hard drive, the Defendant voluntarily took the device to the DHS office and again signed a consent to search form.  He acknowledged that he was providing consent "not the result of any promises, threats, coercion or other intimidation." Government Exhibit 5.  Any statements made by the agents to the effect that any voluntary surrendering of the hard drive would be disclosed to the prosecuting attorney and would assist in reducing any prison sentence was at most "an implication of leniency" and an "indirect promise."  The existence of any such statements is but one factor that the Court evaluates in the "totality of circumstances" test.  *United States v. Fernandes*, 285 F. App'x 119, 124 (5th Cir. 2008).  *See also United States v. Tatum*, 121 F. Supp. 2d 577, 581 (E.D. Tex. 2000)("representing to a suspect that his cooperation will be communicated to the prosecutor does not constitute an impermissible promise of leniency.").  Defendant's surrender of the hard drive was a voluntary act.

---

[1] *See U.S. v. Hurtado*, 899 F.2d 371 (5th Cir. 1990) (rejecting nervousness and surprise allegations as not relevant to the "in custody" determination).

## Conclusion

Defendant's motions to suppress (docket nos. 42 and 44) are denied.

SIGNED this 6th day of October, 2015.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE